69 P.3d 517

STATE of Hawai'i, Plaintiff–
Appellee–Petitioner,

v.

Daniel E.K. SHINYAMA, Defendant–
Appellant–Respondent.

No. 23669.

Supreme Court of Hawai'i.

May 29, 2003.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee-petitioner, State of Hawai'i.

Deborah L. Kim, Deputy Public Defender, on the briefs, for the defendant-appellant-respondent, Daniel E.K. Shinyama.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge IBARRA, assigned by reason of vacancy.

Opinion of the Court by LEVINSON, J.

We granted the plaintiff-appellee-petitioner State of Hawaii's [hereinafter, "the prosecution's"] application for a writ of certiorari in order to review the summary disposition order of the Intermediate Court of Appeals (ICA) in *State v. Shinyama*, 97 Hawai'i 570, 40 P.3d 972 (Haw.Ct.App. 2002) [hereinafter, "the ICA's decision"]. The ICA's decision vacated the judgment of the second circuit court, the Honorable Shackley F. Raffetto presiding, convicting Shinyama of and sentencing him for the offense of second degree theft by shoplifting, in violation of Hawai'i Revised Statutes (HRS) §§ 708–830(8)(a) (1993)[1] and 708–831(1)(b) (Supp.2000),[2] and remanded the matter for a new trial.

In its application, the prosecution contends that the ICA's decision contains two grave

---

1. HRS § 708–830(8) provides in relevant part:
 **Theft.** A person commits theft if the person does any of the following:
 . . . .
 (8) Shoplifting.
 (a) A person conceals or takes possession of the goods or merchandise of any store or retail establishment, with intent to defraud[.]

2. HRS § 708–831(1)(b) provides that "[a] person commits the offense of theft in the second degree if the person commits theft . . . [o]f property or services the value of which exceeds $300[.]"

errors of law. First, the prosecution argues that the ICA misapprehended this court's decision in *State v. Cabrera*, 90 Hawai'i 359, 978 P.2d 797 (1999), in holding that only an "intentional" state of mind applied to the offense of second degree theft by shoplifting. Second, the prosecution asserts that the ICA erred in holding (a) that "any store or retail establishment" constituted an "attendant circumstance" element of the offense of second degree theft by shoplifting and (b) that the circuit court erred in failing separately to instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt that Shinyama acted with the requisite state of mind with respect to the circumstance attendant to the charged conduct.

Although we agree with the ICA that the circuit court's elements instruction constituted plain error, we are compelled to clarify the ICA's analysis. Specifically, we hold that, inasmuch as the "intent to defraud" component of second degree theft by shoplifting, as defined by HRS § 708–800 (1993),[3] prescribes two alternative means of establishing the state of mind requisite to the offense of second degree theft by shoplifting, the circuit court plainly erred in failing to instruct the jury as to the alternative states of mind requisite to the charged offense. In addition, we agree with the ICA's view that, for purposes of HRS § 708–830(8)(a), *see supra* note 1, "any store or retail establishment" constitutes a circumstance attendant to the charged conduct and hold that the prosecution has the burden of proving that the defendant acted with the requisite state of mind as to that element. Accordingly, we affirm the ICA's decision, subject to our discussion *infra*.

## I. BACKGROUND

### A. Factual Background

The present matter arises out of an incident that occurred on September 21, 1999, at approximately 7:00 p.m., at the Ka'ahumanu Shopping Center, located on the island of Maui. The following evidence was adduced at Shinyama's jury trial, which commenced on March 28, 2000 and concluded on March 29, 2000.

On September 21, 1999, Nicole Aquinde witnessed a Hawaiian male removing a display case of jewelry from Prisca Silver Imports (PSI), a free-standing silver jewelry cart located in the center of the shopping center. Aquinde described the male as approximately six feet in height and approximately two hundred and fifty pounds in weight, dressed without a shirt in surfing shorts and slippers; most notably, the man had tattoos running down his neck to his forearm.[4]

Immediately following the incident, Aquinde informed Annaliza Asuncion, a PSI salesperson, that she had observed a man removing a display case from the cart; Asuncion had not herself witnessed the incident.[5] Hiram Heu, an on-duty security guard working at the Ka'ahumanu Shopping Center, testified that he observed a local man with "a lot of tattoos" walking across the food court, without a shirt, wearing shorts and slippers, and holding a clear case under his arm. Heu watched the man enter the elevator and descend to the first level of the mall; shortly thereafter, Heu received a telephone call from Asuncion notifying him of the incident.

Meanwhile, Heu radioed Tavini Salusi, another on-duty security guard, and instructed him to survey the area for a man meeting the foregoing description. Salusi notified Heu that he had observed the suspect walking up the staircase; Salusi immediately detained Shinyama until Heu arrived at the scene. Salusi then located a plastic display case and a tray of silver rings underneath a parked

---

3. HRS § 708–800 defines "intent to defraud" as "(1) [a]n intent to use deception to injure another's interest which has value; or (2) [k]nowledge by the defendant that the defendant is facilitating an injury to another's interest which has value."

4. Aquinde identified Shinyama at trial as the person whom she had witnessed removing the display case from PSI's jewelry cart on September 21, 1999.

5. Asuncion testified that each item of jewelry in the display case bore a price tag denoting the price and size of the item; there were approximately seventy-two rings in the display case, aggregating approximately $1,577.00 in value.

vehicle located in the shopping center's parking lot.

At approximately 7:33 p.m., Maui Police Department (MPD) Officer Greg Alejo arrived at the shopping center. Aquinde gave Officer Alejo a statement regarding the incident and identified Shinyama as the male who had taken the display case of jewelry from the PSI cart. Officer Alejo thereafter arrested Shinyama.

On September 24, 1999, Shinyama was charged by indictment with second degree theft by shoplifting, in violation of HRS §§ 708–803(8)(a) and 708–831(1)(b), *see supra* notes 1 and 2.

### B. *Jury Instructions*

On March 29, 2000, prior to closing arguments, the circuit court settled the jury instructions with counsel, at which time the following colloquy transpired regarding the state of mind requisite to the offense of second degree theft by shoplifting.

THE COURT: 3.16, state of mind, proof by circumstantial evidence. We need intentionally and knowingly?

[Deputy Public Defender (DPD) ]: Well, I think its just intentionally, but—

THE COURT: The definition that I have here is both.

[Deputy Prosecuting Attorney (DPA) ]: Yes.

. . . .

[DPA]: . . . [The indictment] says intentionally, Your Honor, but if you look at the *Cabrera* case, and then if you look at the instruction, if you look at State's instruction No. 7, it's related to this issue, if you want to address that issue now. We could go back to it.

. . . .

THE COURT: Seven talks about valuation.

[DPA]: Right. But so far as the valuation, you know, *Cabrera* says even if we do prove the valuation of $300 in this case, we have to instruct the jury that you may, but are not required to, infer that the defendant believed and [ ] knew the property to be of that value.

. . . .

THE COURT: So you're arguing . . . that we need an instruction on knowingly?

[DPA]: Yes, to define knowingly, because it just tracks the language here. If you believe beyond a reasonable doubt that the value of the property exceeds—

THE COURT: You're not saying that you only need to prove knowingly to convict for the offense?

[DPA]: No, I'm not saying that. That's for the conduct—the act has to be intentional, but then if you read [the pattern jury instruction], the language says the defendant believed or knew the property to be of that value.

THE COURT: So it's an extra element. Not only does he have to do it intentionally; he has to know that it's worth more than 300 bucks, which can be inferred.

Any problem with that?

[DPD]: No problem with that. That's fair.

THE COURT: Okay. So 3.16 will be given as modified, including the references to intentionally, knowingly, but excluding the reference to recklessly.

[DPA]: Yes.

[DPD]: Perfect.

The circuit court thereafter instructed the jury without objection in accordance with the foregoing as follows:

A person commits the offense of Theft in the Second Degree if, with intent to defraud, he did conceal or take possession of the goods or merchandise of Prisca Silver Imports, a store or retail establishment, the value of which property exceeded $300.00.

There are four material elements of the offense of Theft in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These four elements are:

1. That, on or about September 21, 1999, in the County of Maui, State of Hawai'i, the Defendant, Daniel Shinyama, with the intent to defraud;

2. Did conceal or take possession of the goods or merchandise of Prisca Silver Imports, a store or retail establishment;

3. The value of which property exceeded $300.00; and

4. That Defendant acted intentionally or knowingly with respect to the value of the property.

### C. Jury Verdict And Shinyama's Appeal

On March 29, 2000, the jury returned a guilty verdict as to the charged offense. On June 6, 2000, the circuit court sentenced Shinyama as a repeat offender to an indeterminate five-year term of imprisonment, subject to a mandatory minimum term of one year and eight months.

On July 3, 2000, newly-appointed defense counsel filed an *ex parte* motion to extend the time within which to file a notice of appeal, on the basis that Shinyama "was not sure" whether he wanted to pursue an appeal of his conviction and sentence; the circuit court granted defense counsel's motion and extended the time within which to file a notice of appeal from July 6, 2000 to August 7, 2000. On August 16, 2000, defense counsel filed a second *ex parte* motion to extend the time within which to file a notice of appeal, on the basis that, in the interim, Shinyama had been transferred from the Maui Community Correctional Center to the Hālawa Correctional Facility on O'ahu and, due to a miscommunication, Shinyama's case

file had not been sent to the O'ahu Office of the Public Defender in time to file a timely notice of appeal. The circuit court granted defense counsel's second *ex parte* motion, and, on August 17, 2000, Shinyama filed a notice of appeal.[6]

On appeal, Shinyama asserted, *inter alia*, that the circuit court plainly erred in instructing the jury that the prosecution had the burden of proving that Shinyama acted either "intentionally" or "knowingly" with respect to the valuation element of the offense of second degree theft by shoplifting. Specifically, Shinyama argued (1) that, based on this court's decision in *Cabrera* and the plain language of the "intent-to-defraud" component of theft by shoplifting, as set forth in HRS § 708-830(8)(a), *see supra* note 1, "intentionally" was the only state of mind applicable to the elements of the charged offense and (2) that, therefore, the circuit court erred in instructing the jury that it could find that Shinyama acted either "intentionally" or "knowingly" as to the valuation element of second degree theft by shoplifting. Shinyama also argued (3) that the circuit court plainly erred in failing separately to instruct the jury that, in addition to the valuation element set forth in HRS § 708-831(1)(b), *see supra* note 2, the language "any store or retail establishment," set forth in HRS § 708-830(8)(a), describes a circumstance attendant to the charged conduct and (4) that the prosecution had the burden of proving beyond a reasonable doubt that Shinyama

**6.** In its application for a writ of certiorari, the prosecution contends, for the first time, that the ICA lacked jurisdiction to address Shinyama's appeal, on the basis that appellate counsel failed to file a timely notice of appeal. Although the prosecution correctly points out that Shinyama's notice of appeal was untimely (the extension to file a notice of appeal expired on August 7, 2000), it is well settled that this court may relax the deadline for filing a notice of appeal "where justice so warrants" and "the untimely appeal had not been due to [the] defendant's error or wilful inadvertence." *State v. Caraballo*, 62 Haw. 309, 312 and 315, 615 P.2d 91, 94 and 96 (1980).

In the present matter, the record reflects that a miscommunication between the Maui and O'ahu Offices of the Public Defender resulted in the failure to transfer Shinyama's case files to appellate counsel in time to meet the August 7, 2000 deadline. Therefore, we believe that it is appro-

priate to excuse the untimely notice of appeal in the present case. *See State v. Erwin*, 57 Haw. 268, 270, 554 P.2d 236, 238 (1976) (holding that court-appointed counsel's failure to file a timely notice of appeal for an indigent criminal defendant did not foreclose the defendant's right to appeal); *State v. Ahlo*, 79 Hawai'i 385, 392, 903 P.2d 690, 697 (App.1995) (holding that the defendant's failure to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b), which provides for an extension of time to file a notice of appeal for a period not to exceed thirty days, did not preclude the defendant's right to appeal); *State v. Feliciano*, 2 Haw.App. 633, 633–34, 638 P.2d 866, 868 (1982) (preserving the defendant's right to appeal his conviction and sentence despite defense counsel's filing of a notice of appeal more than ten days after the entry of judgment, in violation of HRAP Rule 4(a)). Thus, the ICA had jurisdiction to address the merits of Shinyama's appeal.

acted intentionally with respect to concealing or taking possession ·of the display case of jewelry from "any store or retail establishment."

The prosecution countered that HRS § 708–800, *see supra* note 3, prescribes alternative states of mind applicable to the "intent-to-defraud" component of theft by shoplifting and that the particular state of mind applicable in any given case turns on the factual circumstances of the particular case. With respect to the present matter, the prosecution argued that, inasmuch as there was no evidence adduced at trial that Shinyama utilized "deception" in taking the display case of jewelry, the "knowing" state of mind set forth in subsection (2) of the definition of "intent to defraud," *see* HRS § 708–800, *supra* at note 3, applied to each of the elements of the charged offense. In other words, the prosecution contended that the "intent-to-defraud" component, as applied to the present facts, was "[k]nowledge by the defendant that the defendant is facilitating an injury to another's interest which has value." The prosecution further asserted—contrary to Shinyama's position that, for purposes of HRS § 708–830(8)(a), "any store or retail establishment" constituted a distinct circumstance attendant to the charged conduct—that the circuit court had permissibly incorporated the construct into its instruction regarding the conduct element of the offense—*i.e.,* "the concealment or taking possession of the goods or merchandise of any store or retail establishment."

The ICA, relying solely on this court's decision in *Cabrera*, vacated the circuit court's judgment of conviction and sentence, holding that the circuit court had plainly erred (1) in instructing the jury that the prosecution had the burden of proving beyond a reasonable doubt that Shinyama "acted intentionally *or knowingly*" with respect to the valuation element of the offense of second degree theft by shoplifting and (2) in failing separately to instruct the jury that the prosecution had the burden of proving that Shinyama acted *intentionally* with respect to the "attendant circumstance" element that required the "goods or merchandise" to be taken from "any store or retail establish-

ment." ICA's decision at 2 (emphasis in original). Moreover, the ICA tersely rejected the prosecution's argument regarding the alternative states of mind applicable to the "intent-to-defraud" component of second degree theft by shoplifting, set forth in HRS § 708–800, opining that it was "bound by the supreme court's decision in *State v. Cabrera.*" ICA's decision at 3 n. 4.

We granted the prosecution's timely application for a writ of certiorari.

## II. STANDARDS OF REVIEW

### A. Certiorari From The Intermediate Court Of Appeals

Appeals from the ICA are governed by HRS § 602–59(b) (1993), which provides that an "application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal."

### B. Statutory Interpretation

We review the circuit court's interpretation of a statute *de novo. State v. Pacheco,* 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in

order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

... This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993).

*Id.* at 94–95, 26 P.3d at 583–84 (some citations and internal quotation marks added and some in original) (brackets in original).

*Coon v. City and County of Honolulu,* 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002).

*State v. Yamada,* 99 Hawai'i 542, 548–49, 57 P.3d 467, 473–74, *reconsideration denied,* 100 Hawai'i 295, 59 P.3d 930 (2002).

C. *Jury Instructions*

 We review the circuit court's jury instructions to determine whether, "when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Valentine,* 93 Hawai'i 199, 203, 998 P.2d 479, 483 (2000) (citations and internal quotations signals omitted).

[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*Id.* (citations and internal quotation marks omitted).

*State v. Hironaka,* 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002) (brackets in original).

D. *Plain Error*

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). *State v. Jenkins,* 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (quoting *State v. Staley,* 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (quoting *State v. Maumalanga,* 90 Hawai'i 58, 63, 976 P.2d 372, 377 (1998) (quoting *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998))))).

III. *DISCUSSION*

A. *"Intent To Defraud," As Defined By HRS § 708–800, Prescribes Alternative Means Of Establishing The State Of Mind Requisite To The Offense Of Second Degree Theft By Shoplifting.*

In its application, the prosecution asserts that the ICA misapprehended this court's decision in *Cabrera* by holding (1) that the "intentional" state of mind applied to each of the elements of the charged offense and (2) that the circuit court plainly erred in instructing the jury that either the "intentional" or "knowing" state of mind applied to the valuation element of the charged offense. The prosecution argues that the factual circumstances at issue in the present case are distinguishable from those operative in *Cabrera* and, therefore, that the holding of *Cabrera* should be limited to its facts. Specifically, the prosecution posits that *Cabrera* addressed only the "intent to defraud" component under circumstances where the theft at issue involved "[a]n intent to use deception to injure another's interest which ha[d] value," *see supra* note 3, and, therefore, that *Cabrera* is inapplicable to cases, such as the present matter, in which the facts invoke "[k]nowledge by the defendant that [he] facilitat[ed] an injury to another's interest which ha[d] value." *See id.* In the alternative, the

prosecution maintains that the circuit court's jury instructions that utilized the "higher 'intentional' state of mind . . . merely served to benefit [Shinyama]" and, thus, that any error in allowing either the "intentional" or "knowing" state of mind with respect to the valuation element was harmless.

In his supplemental brief, Shinyama responds that the ICA correctly held, pursuant to *Cabrera* and the Hawai'i Penal Code generally, that only the "intentional" state of mind applies to the valuation element of second degree theft by shoplifting and, therefore, that the circuit court plainly and reversibly erred in instructing the jury regarding alternative states of mind. Shinyama asserts that the prosecution "confuses the issue" by focusing on the definition of "intent to defraud," as set forth in HRS § 708–800, *see supra* note 3. Shinyama contends that HRS § 708–800 pertains only to the states of mind requisite to the "conduct" and "result" elements of the charged offense and is inapplicable to the "attendant circumstance" element, which requires the prosecution to prove beyond a reasonable doubt that the "value" of the property exceeds $300.

We believe that the arguments advanced by both the prosecution and Shinyama miss the mark and hold that the circuit court plainly erred in failing to instruct the jury as to the alternative states of mind prescribed by the definition of "intent to defraud," as set forth in HRS § 708–800, *see supra* note 3.

As a preliminary matter, we revisit our decision in *Cabrera* and address its application to the present matter. In *Cabrera,* a loss prevention officer for the J.C. Penney Department Store observed that a large plastic bag containing store merchandise from the menswear department had been concealed in a merchandise display near the carpet and drapery department of the store. *Cabrera,* 90 Hawai'i at 361–62, 978 P.2d at 799–800. The officer immediately notified the store's video surveillance operator and continued to survey the vicinity of the merchandise display in the event that anyone attempted to claim the bag. *Id.* Prior to

closing, several officers observed the defendant enter the store, proceed to the carpet and drapery department via the elevator, and claim the large plastic bag. *Id.* The defendant was subsequently charged with second degree theft by shoplifting, pursuant to HRS §§ 708–830(8)(a) and 708–831(1)(b), *see supra* notes 1 and 2. *Id.* at 360, 978 P.2d at 798.

On appeal, this court addressed (1) whether the "value" prescribed in HRS § 708–831(1)(b), *see supra* note 2, constituted an "attendant circumstance element" of the offense of second degree theft by shoplifting and (2) whether the offense of second degree theft by shoplifting, as defined by HRS §§ 708–830(8)(a) and 708–831(1)(b), *see supra* notes 1 and 2, imposed strict liability as to the "valuation element." *Cabrera,* 90 Hawai'i at 366–69, 978 P.2d at 804–07. In rendering our decision, we expressly adopted the ICA's analysis in *State v. Mitchell,* 88 Hawai'i 216, 223, 965 P.2d 149, 156 (App.1998), wherein the ICA held that, "[i]n order to establish a defendant's culpability for second degree theft, . . . the State must prove that a defendant intended to steal the statutorily defined value, in this case $300, of the alleged property or services," *Cabrera,* 90 Hawai'i at 367, 978 P.2d at 805. Moreover, we opined, based on our reading of "HRS §§ 708–830(8)(a) and 708–831(1)(b) *in pari materia, see* HRS § 1–16, . . . with HRS §§ 708–801(4) and (5) (1993 & Supp.1998), against the backdrop of HRS §§ 702–204, 702–205, and 702–206 (1993)," that valuation for purposes of second degree theft constituted a circumstance attendant to the conduct proscribed by HRS § 708–830(8)(a)—*i.e.,* the concealment or taking possession of the goods or merchandise of any store or retail establishment[7]—and that the prosecution must prove beyond a reasonable doubt that the defendant acted with the state of mind requisite to each element of the offense, including the valuation element. *Cabrera,* 90 Hawai'i at 368, 978 P.2d at 806.

As for the state of mind requisite to the offense of second degree theft by shoplifting, we stated the following:

---

7. Obviously, our characterization of the conduct element in *Cabrera* was inartful. *See infra* section III. B.

insofar as HRS § 708–830(8)(a) expressly recites that *"intent to defraud"* (emphasis added) is the state of mind requisite to the commission of theft by "shoplifting," and in light of HRS § 702–207, which provides in relevant part that "the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears," . . . it would follow, in any event, that the "intentional" state of mind attaches to all of the elements of the offense, including the attendant circumstance of the value of the property taken.

*Id.* at 369, 978 P.2d at 807.

Although *Cabrera* correctly identified "intent to defraud" as containing the state of mind requisite to the charged offense, the decision did not address the definition of "intent to defraud," as set forth in HRS § 708–800, *see supra* note 3, which prescribes alternative states of mind for the offense of second degree theft by shoplifting—*i.e.*, "(1) [a]n intent to use deception to injure another's interest which has value; *or* (2)[k]nowledge by the defendant that the defendant is facilitating an injury to another's interest which has value." (Emphasis added.) On appeal, the defendant argued in *Cabrera* that the circuit court had erred in failing to instruct the jury as to the state of mind requisite to the "value" of the goods or merchandise allegedly taken from the J.C. Penney Department Store. More specifically, Cabrera argued that the "intentional" state of mind applied to the valuation element of the offense of second degree theft by shoplifting, thereby effectively conceding for purposes of his appeal that the facts with which he was charged implicated subsection (1) of the definition of "intent to defraud" as set forth in HRS § 708–800—*i.e.*, "[a]n intent to use deception to injure another's interest which has value." As such, because the points of error that the defendant raised on appeal in *Cabrera* focused solely on the "use" of "deception," it was unnecessary to address the alternative states of mind prescribed by HRS § 708–800.

■ Pursuant to HRS § 702–205 (1993), "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct [ ] as . . . [a]re specified by

the definition of the offense. . . ." Moreover, HRS § 701–114(1) (1993) provides that "no person may be convicted of an offense unless . . . [e]ach element of the offense[ ] [and t]he state of mind required to establish each element of the offense" are proved beyond a reasonable doubt. Finally, as we noted in *Cabrera*, HRS § 702–207 (1993) provides that "the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears." That being the case, inasmuch as the "intent to defraud" component of the offense of second degree theft by shoplifting prescribes two alternative states of mind, the prosecution had the burden of proving that Shinyama *either* (a) *intended* to use deception to injure PSI's interest, which had value, in which case the requisite state of mind as to each of the elements was "intentionally," *or* (b) *knew* that he was facilitating an injury to PSI's interest, which had value, in which case the requisite state of mind as to each of the elements was "knowingly." *See supra* notes 1 and 2.

As noted *supra* in section I. B., the circuit court instructed the jury in the present matter as follows:

A person commits the offense of Theft in the Second Degree if, with intent to defraud, he did conceal or take possession of the goods or merchandise of Prisca Silver Imports, a store or retail establishment, the value of which property exceeded $300.00.

There are four material elements of the offense of Theft in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These four elements are:

1. That, on or about September 21, 1999, in the County of Maui, State of Hawai'i, the Defendant, Daniel Shinyama, *with the intent to defraud;*

2. Did conceal or take possession of the goods or merchandise of Prisca Silver Imports, a store or retail establishment;

3. The value of which property exceeded $300.00; and

**398**

4. That Defendant acted intentionally or knowingly with respect to the value of the property.

(Emphasis added.) Conspicuously absent from the foregoing instruction was the statutory definition of "intent to defraud," parsing the alternative states of mind requisite to the charged offense. Notwithstanding that the instruction prescribes alternative potential states of mind requisite to *value*, an "attendant circumstance" element of the offense, it does not with respect to the elements of conduct and the attendant circumstance of "any store or retail establishment," thereby rendering the instruction unclear at best.[8] Indeed, the instruction's deficiencies exceed those addressed by the ICA's decision, which targets only the error relating to the valuation element of the offense. Thus, it being " 'grave error to submit a [criminal] case to a jury without accurately defining the offense charged and its elements' . . . [and to instruct the jury] in a manner that would relieve the prosecution of its burden of proving every element of the offense charged," *see State v. Jenkins*, 93 Hawai'i 87, 108, 997 P.2d 13, 34 (2000) (citations and footnotes omitted), we believe that the erroneous instruction affected Shinyama's substantial rights at trial and that the ICA correctly vacated the circuit court's judgment of conviction and sentence and remanded the matter for a new trial.

In order to provide guidance to the circuit court on remand, we suggest the following instruction, which, in our view, correctly sets forth the four elements of the offense of second degree theft by shoplifting:

A person commits the offense of Theft in the Second Degree if, with intent to defraud, he did conceal or take possession of the goods or merchandise of Prisca Silver Imports, a store or retail establishment, the value of which property exceeded $300.00.

There are four material elements of the offense of Theft in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These four elements are:

1. That, on or about September 21, 1999, in the County of Maui, State of Hawai'i, the Defendant, Daniel Shinyama, concealed or took possession of the goods or merchandise of Prisca Silver Imports (the requisite conduct);

2. That Prisca Silver Imports was a store or retail establishment (a requisite attendant circumstance[, *see infra* section III. B.]);

3. That the value of the goods or merchandise of Prisca Silver Imports exceeded $300.00 (a requisite attendant circumstance[, *see Cabrera*, 90 Hawai'i at 368, 978 P.2d at 806]); and

4. That the Defendant, Daniel Shinyama, either (a) intended to use deception to injure Prisca Silver Imports's interest, which had value, in which case the requisite state of mind as to each of the foregoing elements is "intentionally," or (b) knew that he was facilitating an injury to Prisca Silver Imports's interest, which had value, in which case the requisite state of mind as to each of the foregoing elements is "knowingly."

 Although the parties do not raise the point, the foregoing analysis generates the question whether the alternative states of mind potentially requisite to the charged offense, as prescribed by the definition of "intent to defraud" set forth in HRS § 708–800, implicate Shinyama's constitutional right to a unanimous jury verdict, as guaranteed by article I, sections 5[9] and 14[10] of the Hawai'i Constitution. *See State v. Arceo*, 84 Hawai'i 1, 30, 928 P.2d 843, 872 (1996). We believe that it does not, inasmuch as the two states

---

8. We note that Court's Instruction No. 17 undertook to define "intent to defraud," pursuant to HRS § 708–800. The instruction, however, omitted the word "or" after subsection (1), thereby excising the disjunctive language essential to the definition.

9. Article I, section 5 of the Hawai'i Constitution provides in relevant part that "[n]o person shall

be deprived of life, liberty or property without due process of law[.]"

10. Article I, section 14 of the Hawai'i Constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury. . . . Juries, where the crime charged is serious, shall consist of twelve persons. . . ."

of mind prescribed by the "intent to defraud" component of the offense of second degree theft by shoplifting do not describe separate and distinct offenses. Rather, the "intend to defraud" component of the charged offense merely provides "alternative means" of establishing the same offense—second degree theft by shoplifting. *Cf. State v. Jones*, 96 Hawai'i 161, 174, 29 P.3d 351, 364 (2001) (holding that the alternative theories of "absence of consent" and "ineffective consent" constitute "alternative means of proving the attendant circumstance element of a single crime"); *State v. Klinge*, 92 Hawai'i 577, 589, 994 P.2d 509, 521, *reconsideration denied*, 92 Hawai'i 577, 994 P.2d 509 (2000) (holding that "intent to terrorize" and "intent to cause evacuation," for purposes of the offense of terroristic threatening in the first degree, constitute "alternative means" of establishing the mental state with respect to each element of the offense).

In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Jones*, 96 Hawai'i at 170, 29 P.3d at 360 (quoting *State v. Timley*, 255 Kan. 286, 875 P.2d 242, 246 (1994) (quoting *State v. Kitchen*, 110 Wash.2d 403, 756 P.2d 105, 109 (1988))) (citations and quotation marks omitted); *see also Arceo*, 84 Hawai'i at 32, 928 P.2d at 874. "Moreover, the general principle that juries need not agree on alternative means of establishing the mental state component possessed by the defendant is well established and widely recognized." *Klinge*, 92 Hawai'i at 588, 994 P.2d at 520 ("It is of little consequence ... that some jurors may have believed that Klinge was guilty of terroristic threatening in the first degree based on one alternative while others may have believed he was guilty based on another, as long as such differences did not reflect disagreement on the facts pertinent to Klinge's conduct."); *Jones*, 96 Hawai'i at 181, 29 P.3d at 371 (holding that unanimity by the jury is not required, "provided that there is no reasonable possibility that the jury's verdict was based on an alternative unsupported by sufficient evidence"). Thus, a proper elements instruction, which sets forth the alternative states of mind prescribed by the "intent to defraud" component of second degree theft by shoplifting, does not violate a defendant's constitutional right to a unanimous jury verdict.

B. *"Any Store Or Retail Establishment" Constitutes An "Attendant Circumstance" For Purposes Of HRS § 708–830(8)(a), Theft By Shoplifting.*

▇ In its application, the prosecution contends that the ICA erred in holding (1) that "any store or retail establishment" constitutes a separate "attendant circumstance" of the offense of theft by shoplifting and (2) that, therefore, the circuit court plainly erred in failing separately to instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt that Shinyama acted with the requisite state of mind as to such attendant circumstance. The prosecution asserts that the circuit court "properly placed the language, consistent with *Cabrera*, within the conduct element" of the charged offense, inasmuch as the legislature intended that "any store or retail establishment" "merely describe[ ] the items [of value] which Respondent's conduct affected." By contrast, Shinyama counters that, although not expressly addressed in *Cabrera*, the "commercial character" of the offense of theft by

**400**

shoplifting constitutes an attendant circumstance element, which the prosecution had the burden of proving beyond a reasonable doubt at trial.

As we previously noted, "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct [ ] as . . . [a]re specified by the definition of the offense. . . ." HRS § 702–205. HRS § 708–830(8)(a), *see supra* note 1, specifically provides that a person commits the offense of theft by shoplifting if the "person conceals or takes possession of the goods or merchandise *of any store or retail establishment,* with intent to defraud." (Emphasis added.) The phrase "store or retail establishment" is precisely what differentiates shoplifting from the other types of theft set forth in HRS § 708–830; put differently, if a person does not conceal or take possession of goods or merchandise from a store or retail establishment, that person has not committed the offense of theft by shoplifting. Accordingly, we hold that "any store or retail establishment" constitutes a circumstance attendant to the conduct proscribed by HRS § 708–830(8)(a)— *i.e.,* the concealing or taking possession of the goods or merchandise—which the prosecution has the burden of proving beyond a reasonable doubt at trial. We further hold that the prosecution has the burden of proving that the defendant acted with the requisite state of mind as to that element.

## IV. *CONCLUSION*

Based on the foregoing analysis, we affirm the ICA's decision but for the reasons expressed in this opinion.