**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000479
26-AUG-2025
08:01 AM
Dkt. 103 SO**

NO. CAAP-22-0000479

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
DENNIS DAVID MURALLES JUANTA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-21-0000433)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Dennis David Muralles Juanta
(**Juanta**) appeals from the Judgment of Conviction and Probation
Sentence (**Judgment**) entered on July 11, 2022, in the Circuit
Court of the First Circuit.[1]  Following a jury trial, Juanta was
convicted of Terroristic Threatening in the First Degree (**TT1**),
in violation of Hawaii Revised Statutes (**HRS**) § 707-716(1)(e).[2]

---

[1]    The Honorable Paul B.K. Wong presided.

[2]    HRS § 707-716 (2014) provides in relevant part:

        (1) A person commits the offense of terroristic
    threatening in the first degree if the person commits
    terroristic threatening:

        . . . .

        (e)   With the use of a dangerous instrument
        . . . .

    HRS § 707-715 (2014) states, in relevant part:

        **Terroristic threatening, defined.**  A person
    commits the offense of terroristic threatening if the
    person threatens, by word or conduct, to cause bodily
    injury to another person . . . :

                                        (continued...)

On appeal, Juanta contends that the Judgment should be vacated because: (1) the deputy prosecuting attorney (**DPA**) committed misconduct in closing and rebuttal arguments; and (2) the Circuit Court's jury instructions were plainly erroneous as to TT1 and the proper application of HRS § 703-310(1), quoted infra.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Juanta's contentions as follows, and affirm.

(1) At trial, Juanta asserted that his actions against complainant Tanea Teixeira-Vierra (**Tanea**) were justified in defense of property under HRS § 703-306.[3] On appeal, Juanta

_____

[2] (...continued)

> (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

[3] HRS § 703-306 (2014) states, in relevant part:

> **Use of force for the protection of property.** (1) The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:
>
> (a) To prevent the commission of criminal trespass or burglary in a building or upon real property in the actor's possession or in the possession of another person for whose protection the actor acts;
>
> (b) To prevent unlawful entry upon real property in the actor's possession or in the possession of another person for whose protection the actor acts . . . .
>
> . . . .
>
> (2) The actor may in the circumstances specified in subsection (1) use such force as the actor believes is necessary to protect the threatened property, provided that the actor first requests the person against whom force is used to desist from the person's interference with the property, unless the actor believes that:
>
> (a) Such a request would be useless;
>
> (b) It would be dangerous to the actor or another person to make the request; or
>
> (c) Substantial harm would be done to the physical condition of the property which is sought to be protected before the request could effectively be made.

contends that the DPA committed four acts of misconduct in his closing and rebuttal arguments related to this justification. Specifically, Juanta contends that the DPA improperly argued that Juanta's defense-of-property justification was inapplicable because: (a) Tanea's trespass was irrelevant; (b) Tanea was a family member of Juanta; and (c) Juanta did not first attempt non-violent alternatives before using force. Juanta also contends that the DPA "misled the jury by mixing deadly versus non-deadly force analysis[.]"

Although Juanta did not object during trial to any of the challenged statements, in prosecutorial misconduct cases, "there is no difference between the plain error and harmless beyond a reasonable doubt standards of review." State v. Hirata, 152 Hawaiʻi 27, 31, 520 P.3d 225, 229 (2022) (citing State v. Riveira, 149 Hawaiʻi 427, 431 n.10, 494 P.3d 1160, 1164 n.10 (2021)). "[O]nce the defense establishes misconduct — objection or no objection — appellate review is the same: 'After considering the nature of the prosecuting attorney's conduct, promptness or lack of a curative instruction, and strength or weakness of the evidence against the defendant, a reviewing court will vacate a conviction if there is a reasonable possibility that the conduct might have affected the trial's outcome.'" Id. (quoting Riveira, 149 Hawaiʻi at 431, 494 P.3d at 1164).

We address each of the challenged statements below.

(a) DPA's argument that Tanea's trespass was irrelevant

In his rebuttal argument, the DPA stated in part:

> The big issue really seems to be defense of property. Did the defendant -- was the defendant justified in using force?
>
> Now, the State agrees with the Defense. This is not deadly force. He never fired the shotgun at her. So it doesn't meet that definition of deadly force. It was, however, force. And it was unjustified because it was not immediately necessary.
>
> Doesn't matter if Tanea committed trespass or not. It matters whether or not the force was immediately necessary. And it wasn't, because this is Tanea. This is, again, not a burglar rifling through things. This is a stepdaughter. When she -- when the defendant realized it was Tanea, he said that there was a bit of a relief. Why didn't he put the shotgun down at that point?

Juanta argues that the DPA's statement, "Doesn't matter if Tanea committed trespass or not[,]" misstated the law because the alleged trespass "was essential to the justifiability of [Juanta's] use of non-deadly force to eject the trespasser."

In context, the DPA's statement was not improper. The DPA did not state that the alleged trespass was not an essential element of Juanta's defense-of-property justification. He simply drew the jury's attention to the parties' primary dispute — whether the force used by Juanta was "immediately necessary." HRS § 703-306. If the State proved that Juanta's use of force was not immediately necessary, his justification would fail on that basis alone, regardless of the alleged trespass.

> (b) <u>DPA's argument that Tanea was a family member</u>

In his closing argument, the DPA stated in part:

> But this case does not involve a legitimate or legal defense of property. The defense of property means the use of force is justified if the defendant reasonably believes that such force is immediately necessary. Firing your weapon to shake your five-month pregnant, 20 year-old stepdaughter, whose mom is right behind you, your one year-old is in the children's room next to Tanea, immediately necessary?
>
> . . . .
>
> But it's not about what the defendant thought. It's what a reasonable person would think. You decide what a reasonable person would think. Would a reasonable person, who's trying to get Tanea out of the RV, use a shotgun? No. That's ridiculous.
>
> If the situation were a homeless burglar, rifling through your things, through the kitchen cupboards, and there's no time to call 911, or wait for the police to arrive, then fire away. A reasonable person would agree you can fire the shotgun in an effort to scare away the burglar.
>
> But this wasn't a burglar. This was Tanea. His stepdaughter comes by all the time, to help around the house, play with her siblings, help her mom with whatever she needs help with.

In his rebuttal, the DPA again referred to Tanea as Juanta's "stepdaughter." <u>See</u> <u>supra</u>.

Juanta argues that the DPA's statements "essentially assert[] that defense of property was inapplicable to [Juanta] because the trespasser was his pregnant stepdaughter" rather than a stranger.

4

That is not our read of the challenged statements. The DPA did not state or imply that Juanta's defense-of-property justification could not apply to a family member. Rather, the DPA drew attention to evidence of Tanea's pregnancy[4] and relation to Juanta, as they were arguably factors in deciding whether he <u>reasonably</u> believed his use of force was immediately necessary under the circumstances. <u>See</u> State v. Augustin, 101 Hawaiʻi 127, 128, 63 P.3d 1097, 1098 (2002) ("With respect to the use-of-force defenses, the defendant's belief must be 'reasonable,' see HRS § 703-300 (1993) . . . ."). The challenged statements were not improper.

(c) <u>DPA's argument that Juanta did not first attempt non-violent alternatives before using force</u>

In his closing argument, the DPA stated in part:

> If the defendant really wanted Tanea out of the home, he could have taken different steps, nonviolent steps. Maybe get mom involved earlier. Apparently that worked when Tanya[, Tanea's mother,] came in and said leave. Or call the police, and wait. But the defendant did neither of those two things. There were nonviolent alternatives.
>
> But the defendant chose to terrorize her with a firearm instead. That wasn't immediately necessary. And because it wasn't immediately necessary, the defendant was not justified in using force to defend property.

Juanta argues that the DPA's statements misstated the law and the jury instructions because the defense-of-property justification does not require a defendant to employ non-violent alternatives before using non-deadly force.

In context, the DPA's statements were not improper. The DPA did not state that the law or the jury instructions required that Juanta employ non-violent alternatives before using non-deadly force to protect property. Rather, the DPA was arguing that a reasonable person in Juanta's circumstances, *i.e.*, confronting his stepdaughter who stopped by "all the time[,]" would not have believed it was immediately necessary to fire a shotgun when there were other non-violent steps (other than telling her to get out) he might have taken to get her to leave.

---

[4] Juanta testified that he knew Tanea was pregnant the morning of the incident.

This was permissible argument by the DPA.

      (d)  <u>DPA's mixing of deadly and non-deadly force analyses</u>

Juanta contends that the DPA's argument regarding a hypothetical "homeless burglar," quoted above in subsection (b), mixed deadly and non-deadly force analyses. Juanta characterizes the DPA's argument as follows: "[T]he [DPA] argued that [Juanta] would have been entitled to use deadly force by firing his shotgun to defend his property if the intruder were a 'homeless burglar' but contended that he was not entitled to use non-deadly force to defend against his pregnant stepdaughter's adamant refusals to leave."

This is not an accurate characterization. Juanta argued that firing his shotgun was justified in defense of property, and both the State and Juanta agreed and argued to the jury that because he did not fire at Tanea, this constituted non-deadly force. In arguing that Juanta could not have <u>reasonably</u> believed this use of force was immediately necessary, the DPA contrasted Tanea's presence in the RV with that of a hypothetical burglar. The DPA did not argue that a reasonable person could or should use deadly force to protect property from a burglar. Rather, he argued that a reasonable person could, if "there's no time to call 911, or wait for the police to arrive," "fire the shotgun in an effort <u>to scare away</u> the burglar." (Emphasis added.) The DPA was not "mixing deadly versus non-deadly force analyses." This was permissible argument.

(2) Juanta contends that the Circuit Court's jury instructions were plainly erroneous: "(a) as to TT1 because they failed to require jury unanimity as to whether [Juanta] acted intentionally or recklessly in purportedly committing the [terroristic threatening]; and (b) as to the proper application of HRS § 703-310(1)."

"When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." <u>State v. Nichols</u>, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006) (quoting

State v. Gonsalves, 108 Hawaiʻi 289, 292, 119 P.3d 597, 600 (2005)).

Juanta makes no argument regarding the jury unanimity issue. That point is waived.[5/] See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7). Rather, Juanta argues that the proper application of HRS § 703-310(1) to his defense-of-property justification "required the jury to specify whether they found [Juanta] guilty of TT1 by intentional or reckless conduct."

Juanta's justification, premised on HRS § 703-306, is subject to the following limitation stated in HRS § 703-310(1) (2014):

> When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 703-303 to 703-309 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the actor's use of force, the justification afforded by those sections is unavailable in a prosecution <u>for an offense for which recklessness or negligence</u>, as the case may be, <u>suffices</u> to establish culpability.

(Emphasis added.)

In <u>State v. Nupeiset</u>, 90 Hawaiʻi 175, 977 P.2d 183 (App. 1999), this court summarized the above limitation on justification, as follows:

> HRS § 703-310(1) is couched in terms precluding the use of force defense where the actor is reckless or negligent in his belief that force is necessary or in acquiring that belief or knowledge. In such a case, "the actor does not have a defense of justification for any crime as to which recklessness or negligence <u>suffices</u> to establish culpability."

<u>Id.</u> at 186, 977 P.2d at 194 (emphasis added) (quoting Commentary on HRS § 703-310). "Suffice" in this context means "to be enough or adequate for; satisfy." <u>Webster's Encyclopedic Unabridged Dictionary</u> 1901 (1996 ed.).

---

[5/] In any event, the jury instruction for TT1 properly set forth the alternative states of mind prescribed in HRS § 707-715, *i.e.*, that Juanta acted "with the intent to terrorize or in reckless disregard of the risk of terrorizing Tanea . . . ." See <u>State v. Shinyama</u>, 101 Hawaiʻi 389, 399, 69 P.3d 517, 527 (2003) (recognizing "the general principle that juries need not agree on alternative means of establishing the mental state component possessed by the defendant" (quoting <u>State v. Klinge</u>, 92 Hawaiʻi 577, 588, 994 P.2d 509, 520 (2000))).

Recklessness suffices to establish culpability for the TT1 offense, *i.e.*, a person commits TT1 if they perform the required act "[w]ith the intent to terrorize, <u>or in reckless disregard of the risk of terrorizing</u>, another person[.]" HRS § 707-715 (emphasis added). Because recklessness is <u>enough</u> to establish culpability for the TT1 offense, the limitation stated in HRS § 703-310(1), based on its plain and unambiguous meaning, applies with equal force to the TT1 offense, whether it is based on an intentional or reckless act. Thus, HRS § 703-310 precludes the use of force defense as against TT1 where the actor is reckless or negligent in their belief that force is necessary or in acquiring that belief or knowledge.

Consistent with the language of HRS § 703-310(1) and modeled on HAWJIC 7.18A, the Circuit Court instructed the jury on the use of force, in relevant part, as follows:

> The use of force upon or toward another person in defense of property is not available for any offense in which the requisite state of mind is either recklessness or negligence if the prosecution proves:
>
> (1) The defendant was reckless in believing that he was justified in using deadly force or force in defense of property; or
>
> (2) The defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of deadly force or force in defense of property.

There is no dispute here that Juanta's defense-of-property justification was subject to the provisions of HRS § 703-310(1). Juanta argues, however, that the above instruction was erroneous or misleading because,

> [o]nly if the jury concluded that [Juanta] committed the TT1 with a reckless state of mind AND was reckless in believing he was justified in using force to eject the trespasser would the defense-of-property justification be unavailable. If the jury found that he intentionally committed the TT1, but was reckless in believing he was justified in using force to eject the trespasser, then the defense-of-property justification was available to him and should have absolved him of guilt. Also, if the jury found that he recklessly committed the TT1, but found that he intentionally or knowingly believed he was justified in using force to eject the trespasser, the justification likewise should have absolved him of guilt.

This counterintuitive construction of HRS § 703-310(1) would mean that the defense-of-property justification would be:

8

(a) available to a defendant who acts with the intent to terrorize but <u>not</u> to one who acts only recklessly or negligently; or (b) available to a defendant who is intentionally or knowingly wrong in their belief that force is necessary (*i.e.*, knows that force is unnecessary) but <u>not</u> to a defendant who is only reckless or negligent in their belief.  Juanta's argument finds no support in the plain language of HRS § 703-310(1), whose limitation applies to any offense for which recklessness or negligence <u>suffices</u> to establish culpability.  <u>See</u> <u>supra</u>.

On this record, we cannot conclude that "when read and considered as a whole," the instructions given in relation to Juanta's defense-of-property justification were "prejudicially insufficient, erroneous, inconsistent, or misleading."  <u>Nichols</u>, 111 Hawaiʻi at 334, 141 P.3d at 981 (quoting <u>Gonsalves</u>, 108 Hawaiʻi at 292, 119 P.3d at 600).

For the reasons discussed above, the Judgment of Conviction and Probation Sentence, entered on July 11, 2022, in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, August 26, 2025.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender
for Defendant-Appellant.

Benjamin Rose,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge