175 P.3d 136

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Hiram WHITAKER, Defendant–Appellant.**

**No. 26777.**

Intermediate Court of Appeals of Hawai'i.

Dec. 31, 2007.

Karen T. Nakasone, deputy public defender, State of Hawai'i, for defendant-appellant.

Bradley R. Pulice and Mary Martin (Clay Chapman Crumpton Iwamura & Pulice), special deputy attorneys general, State of Hawai'i, for plaintiff-appellee.

WATANABE, Presiding J., FOLEY, and NAKAMURA, JJ.

Opinion of the Court by WATANABE, Presiding J.

As a result of a claim made by Defendant–Appellant Hiram Whitaker (Whitaker) to AIG Hawai'i Insurance Company, Inc. (AIG), his automobile insurance carrier, in which he sought insurance benefits for vandalism damages to his car, Whitaker was indicted, convicted, and sentenced for Insurance Fraud in violation of Hawaii Revised Statutes (HRS) § 431:10C–307.7(a)(1) and (b)(2) (2005),[1] and Attempted Theft in the Second Degree (Attempted Theft 2) in violation of HRS § 708–831(1)(b) (Supp.2000) and HRS § 705–500 (1993).[2]

---

1. Hawaii Revised Statutes (HRS) § 431:10C–307.7 (2005) provides currently as it did when Defendant–Appellant Hiram Whitaker (Whitaker) was indicted, in pertinent part, as follows:

**Insurance Fraud; penalties.** (a) A person commits the offense of insurance fraud if the person acts or omits to act with intent to obtain benefits or recovery or compensation for services provided, or provides legal assistance or counsel with intent to obtain benefits or recovery, through the following means:

(1) Knowingly presenting, or causing or permitting to be presented, any false information on a claim;

. . . .

(b) Violation of subsection (a) is a criminal offense and shall constitute a:

. . . .

(2) Class C felony if the value of the benefits, recovery, or compensation obtained or attempted to be obtained is more than $300[.]

2. At the time Whitaker allegedly committed the offense of Attempted Theft in the Second Degree, HRS § 708–831(1)(b) (1993 & Supp.2000) provided:

**Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:

. . . .

(b) Of property or services the value of which exceeds $300[.]

Additionally, HRS § 708–830(2) (1993) provided: "A person commits theft if at the time of the

Whitaker now appeals from the Judgment entered by the Circuit Court of the First Circuit [3] (the circuit court) on July 27, 2004, alleging that the circuit court erroneously instructed the jury about the offenses with which he was charged.

We affirm.

## BACKGROUND

On the evening of February 28, 2001, Whitaker parked his car on a grassy area about ten to twenty feet from his family's home in Wahiawā. According to Whitaker, he was awakened the next morning by his wife, who told him, "babes, someone messed your car up." After walking outside to look at his car, Whitaker called AIG to report that the car had been damaged by vandals. According to Whitaker, AIG instructed him to first call the police and get a police report number. Whitaker therefore drove his car to the Wahiawā police station where Officer Billy Masaniai (Officer Masaniai) inspected the car, had Whitaker write down a description of the damages to the car, and prepared a written report of the damages. In his written report, Officer Masaniai documented that Whitaker's car had scratch marks along the side panels of the car, on the trunk area, and on the hood. The report did not note any scratches to the roof of the car.

The following day, Whitaker drove his car from Wahiawā to AIG's office in Honolulu for an inspection. There, Whitaker met with both Leona Taganas (Taganas), an auto-material-damage appraiser who assessed and assigned values to the damages alleged by

Whitaker, and Taganas's supervisor, John Hanson (Hanson).

At trial, Cheryl Cabrera (Cabrera), an AIG claims-service representative, testified that on March 1, 2001, she was assigned to follow up on Whitaker's telephone call to AIG in which he reported the vandalism to his car. She called Whitaker at home, asked him to specifically describe the damages to his car, and requested that Whitaker "come in the next day for an estimate." Cabrera recalled that the damages claimed by Whitaker were

> [p]retty extensive ... for a vehicle being vandalized. I remember him stating his vehicle, the entire car was scratched or keyed. I remember damages he mentioned to the hood, trunk, passenger side, and driver's side signal light[.]

Cabrera testified that she "non-committed a claim for [Whitaker's] estimate because of the damages were just so—I've done this for 10 years, so it just seemed a little bit too detailed as far as his damages[.]" Cabrera explained:

> The damages were inconsistent of a vehicle being vandalized. It was just too detailed, too extensive. When your car gets vandalized, it's pretty much random, they come and go in an instant. It's just every part of his vehicle was just damaged, either scratched or indented and so forth; it was just too detailed. We have our own little red flags that we look at as far as each claim that we get; thus, it was transferred to another adjuster.

Taganas testified that when she first observed Whitaker's car, it was "primered" or "prepped to be painted" on most of the pan-

---

offense, the person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."

HRS § 705–500 (1993) defines "criminal attempt" as follows:

> **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
> (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
> (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

> (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

> (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

3. *The Honorable Hilary Gangnes presided.*

els and on the trunk. Additionally, the car had "scratches and pry marks" and

> [t]he trunk lid had holes from a spoiler that were all pried, they had pry marks like if you put an object in it and widened the holes, that's what it looked like. And then the right side of the trunk was out of alignment, it was lifted up on one side . . . [b]y the hinge area.

Taganas photographed the damages that Whitaker claimed were caused by vandalism: scratches on all areas of the car, including the hood, fenders, doors, quarter panels, trunk lid, bumpers, roof, trunk and engine lid panels, luggage lid panel, and mirror; a broken left-rear tail lamp; a damaged right-front door lock; and a bowed-up trunk lid. Taganas testified that Whitaker represented to her that all the damages on the car were the result of vandalism. Taganas also explained that if Whitaker had reported any pre-existing damages, she would have noted it on her appraiser report, in accordance with standard AIG procedure. Taganas utilized an AIG computer program to generate an estimate of the cost to repair the damages claimed by Whitaker. Based upon the computerized estimate, it would cost "over $700" to repair the damages to the bowed-up trunk lid and "fourteen hundred dollars" to repair the scratch marks.

Taganas also explained that Whitaker's insurance claim was "unusual" because the car "had some rust to the hinge area on the trunk lid" and "it's not common for rust to develop that soon" after a loss is reported. Additionally, "[t]here was paint curly-Q's still left on the vehicle[,]" which is "something you see if we inspected the car at the location that the loss occurred" rather than after a car had been driven to a different location. On cross-examination, Taganas denied that Whitaker had mentioned that some of the damages to the car pre-existed the vandalism.

Hanson testified that as Taganas was inspecting Whitaker's vehicle, he "did a quick walk around the car and walked up to [Taganas] and asked her . . . what the nature of the loss was" and learned "it was a vandalism claim." Hanson expressed that he thought it was odd that the fragile "curly-Q" paint frag-

ments from a scratch in the paint could have remained on the car after it had been driven from Wahiawā to Honolulu. At that point, he asked Taganas to get a camera and take pictures of the "curly-Qs" so the evidence could be preserved. Hanson stated that after Taganas began taking photos, "Whitaker started brushing [the paint fragments] off the car[,] getting rid of it." According to Hanson, he had Whitaker walk around the car and identify all areas of damage he claimed resulted from the vandalism. Hanson testified that Whitaker claimed that the scratch marks, "the spoiler mounting holes around the rear deck lid and on the quarter panel," which had been pried with "a screwdriver or a metal or metallic implement of some sort," and damage to "the right side of the trunk lid itself that was bowed up," were all caused by vandalism. Hanson also testified that when Whitaker closed the trunk at the end of the inspection, he closed it in a manner that was "very odd" and seemed to indicate that Whitaker was "very familiar with the problem that this vehicle has."

Jonathan Dela Vega (Dela Vega), employed at the time of the alleged offense as a senior investigator in the AIG Special Investigations Unit, testified that on March 2, 2001, he was assigned to investigate the validity of the damages claimed by Whitaker. During a taped interview on March 6, 2001 that was played for the jury, Whitaker denied that the car had any damage before he parked it on the evening of February 28, 2001 and also denied scratching the car. Whitaker did, however, acknowledge that at the time of the alleged vandalism, he had been planning to have the car painted for between $600 and $700.

Both Whitaker and his wife, Eva, testified at trial. They described the vandalism damages to the car that they observed on March 1, 2001. They also acknowledged that some of the damages to the car pre-existed the vandalism. According to Whitaker, when he parked the car in front of his house on the evening of February 28, 2001, there were no scratches on the car. However, at the bottom of the passenger side of the car, there was a silver-dollar-sized crease between the door and the quarter panel, which he pre-

sumed resulted from someone else opening their car's door and hitting that area. Additionally, the car's trunk was bowed up due to a split seam on the inside of the trunk that had been "tack-welded [with a] piece of metal[.]" Whitaker insisted that he told Taganas about the pre-existing damages.

On April 23, 2004, the circuit court stated, on the record, which jury instructions the parties had agreed upon. Whitaker's attorney objected to both "Court's Supplemental No. 1" (Insurance Fraud instruction) defining Insurance Fraud, and the Attempted Theft instruction defining "attempt."

THE COURT: ... And then we've got Court's Supplemental No. 1 defining Insurance Fraud, and I believe you had some objection there, [Defense Counsel]?

[Defense Counsel]: Yes, Your Honor. My objection is as to the third element, that [Whitaker] believed the value of the benefits or recovery or compensation for benefits or sources provided; to wit, insurance proceeds, exceeds $300.

My concern is the word "believed[."] I'm going to ask that the state of mind for this particular element be knowing, so that [Whitaker] knew the value of the benefits. I don't—"believed" is too vague, and it's not defined by the [Hawai'i Pattern Jury Instructions—Criminal (HAWJIC)]. We don't have a definition. [T]here's, you know, a common understanding, but we have a definition of knowledge, and I believe that knowledge attaches to element three, so my objection is to the state of mind as to element three.

[Special Deputy Attorney General]: Your Honor, we're going to ask that that instruction be submitted, as I believe that the language incorporated into this instruction was drafted off of the HAWJIC instructions as they relate to the same type of element in the theft statute, and this is what the Supreme Court has validated, and I don't believe that there's going to be any confusion to the jury in the context of this particular element of the offense.

THE COURT: I'm going to give the instruction over objection of [Whitaker]. The Court finds that it's accurate and ap-propriate to use the word "believed" based on the statutory language as to theft, and so the Court will give that over Defense's objection.

And instruction .01 is the attempt instruction. Again I believe, defense counsel, you had an objection here also?

[Defense Counsel]: Yes, I have the same objections as to the state of mind in Court's Supplemental Instruction No. 1. In this instruction, my concern is for the last set of elements, that [Whitaker] believed the value of the property exceeded $300. Again, I'd ask that the state of mind be knowing as opposed to the word "believed," so the same objection.

THE COURT: And I assume you have the same argument?

[Special Deputy Attorney General]: Yes, Your Honor, we'll just incorporate the arguments made with respect to Court's Supplemental Instruction No. 1.

THE COURT: And the Court notes that Theft in the Second Degree as defined in the HAWJIC does include that word, that [Whitaker] believed the value to exceed $300, so the Court will give it over the objection of [Whitaker].

After the meeting in the judge's chambers, the trial continued. Once all the witnesses and evidence had been presented, the circuit court instructed the jury. The circuit court read the following Insurance Fraud instruction to the jury:

In Count [I] of the Indictment, [Whitaker] is charged with the offense of Insurance Fraud. A person commits the offense of Insurance Fraud if he knowingly presents, causes or permits to be presented false information on a claim with the intent to obtain benefits, or recovery, or compensation for benefits or services provided, the value of which exceeds $300.

There are three material elements of the offense of Insurance Fraud, each of which the prosecution must prove beyond a reasonable doubt. These three elements are:

(1), That on or about March 1st, 2001, to and including March 6th, 2001, in the City and County of Honolulu, State of Hawai'i, [Whitaker] knowingly presented, caused or

permitted to be presented false information on a claim to AIG Hawai'i Insurance Company, Inc.; and,

(2), That [Whitaker] did so with the intent to obtain benefits, or recovery, or compensation for benefits or services provided; to wit, insurance proceeds; and

(3), That [Whitaker] believed the value of the benefits, or recovery, or compensation for benefits or services provided; to wit, insurance proceeds, exceeded $300.

The circuit court also read the following jury instructions on the Attempted Theft 2 charge:

In Count II of the [I]ndictment, [Whitaker] is charged with the offense of Attempted Theft [2]. A person commits the offense of Attempted Theft [2] if he intentionally engages in conduct which, under the circumstances as he believed them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of Theft [2].

There are two material elements of the offense of Attempted Theft [2], each of which the prosecution must prove beyond a reasonable doubt. These two elements are:

(1), That on or about March 1st, 2001 to and including March 6th, 2001, in the City and County of Honolulu, State of Hawai'i, [Whitaker] engaged in conduct which, under the circumstances as [Whitaker] believed them to be, was a substantial step in a course of conduct intended by [Whitaker] to culminate in the commission of Theft [2]; and

(2), That [Whitaker] engaged in such conduct intentionally.

Conduct shall not be considered a substantial step unless it is strongly corroborative of [Whitaker's] intent to commit Theft [2].

A person commits the offense of Theft [2] if he obtains or exerts control over the property of another, the value of which exceeds $300, by deception with intent to deprive the person of the property.

There are four material elements of the offense of Theft [2], each of which the prosecution must prove beyond a reasonable doubt. These four elements are:

(1), That on or about March 1st, 2001, to and including March 6th, 2001, in the City and County of Honolulu, State of Hawai'i, [Whitaker] obtained or exerted control over the property of [AIG], and

(2), That [Whitaker] did so by deception; and

(3), That [Whitaker] did so with intent to deprive [AIG] of the property, to wit, insurance proceeds; and

(4), That [Whitaker] believed the value of the property exceeded $300.

The circuit court then instructed the jury on the statutory valuation presumption under HRS § 708–801(4) (1993).

If you find beyond a reasonable doubt that the value of the property exceeded $300, you may, but are not required to, infer that [Whitaker] believed the property to be of that value. If you do so infer, you must nevertheless consider all the evidence in the case in determining whether the State has proven beyond a reasonable doubt that [Whitaker] believed the property to be of that value.

It is a defense to Attempted Theft [2] that [Whitaker] believed the valuation of the property to be $300 or less.

After all the jury instructions were given and both counsel had made their closing arguments, the jury was excused to deliberate.

During jury deliberations, the jury sent three questions to the court. The first question asked was: "If part of the claim is insurance fraud[,] does that make the other claim insurance fraud?" In response to this question, defense counsel asked the circuit court to give the jury further instructions regarding unanimity:

[Defense Counsel]: . . .

Unanimity instructions are based on, in terms of the Hawaii pattern jury instructions 8.02, I do believe that in this case a unanimity instruction would be appropriate because we do have a situation where there are two acts or omissions in question.

If six of the jurors feel that [Whitaker] used fraud in terms of enhancing the damages, versus another six who feel that he

used deception in not claiming preexisting damage, then the verdict must be not guilty, and they have—they need to know that they must be unanimous on what act or omission is being decided upon.

The circuit court found that it would be inappropriate to give any further jury instructions. In making this finding, the circuit court said, "[Jury Communication No. 1] talks about if part of the claim, and we do have two counts here, so if we get a further question from the jury, we may have to revisit this issue[.]" The circuit court then responded to the jury's question in the following manner: "The law does not permit the Court to address your inquiry. Please apply your collective wisdom and common sense in interpreting the instructions of law furnished to you."

The second jury question asked was: "On what basis should we assume that [Whitaker] knew that the theft part of the claim exceeded $300?" The circuit court responded with the same answer it gave for the first jury question. Defense counsel then argued:

[Defense Counsel]: Your Honor, my main concern is the use of the word "assume" in the question.

I am asking the Court to specifically state in the answer that the law does not allow you to assume anything, period.

I am concerned that we have a situation where they're making assumptions and that is not allowed under the law. So that's my concern.

The circuit court determined:

THE COURT: ... the instructions do address the basis upon which the jury is to determine [Whitaker's] guilt or innocence, and that no further instruction or clarification from the Court would be appropriate.

That they're referred back to the instructions which do tell them that they can't assume, and that for whatever reason the use of the word in the question does not require the Court to give them a different instruction from what they've already been instructed as to the basis for your determining guilt or innocence.

The third question from the jury asked whether it was a defense to Insurance Fraud if Whitaker believed the value of the benefits or services provided would be $300 or less. Based upon this jury communication, the circuit court found it necessary to correct one of the jury instructions. The corrected instruction read:

If you find beyond a reasonable doubt that the value of the property or services exceeded $300, you may, but are not required to infer that [Whitaker] believed the property or services to be of that value.

If you do so infer, you must nevertheless consider all the evidence in the case in determining whether the State has proven beyond a reasonable doubt that [Whitaker] believed the property or services to be of that value.

It is a defense to attempted theft in the second degree <u>and insurance fraud</u> that [Whitaker] believed the valuation of the property or services to be $300 or less.

(Added language to prior instruction underscored.)

On April 26, 2004, the jury found Whitaker guilty as charged on both counts. On July 27, 2004, the court sentenced Whitaker to a five-year term of probation on both Counts I and II, to run concurrently. Whitaker timely filed his notice of appeal on August 26, 2004.

## ISSUES ON APPEAL

Whitaker asserts that the circuit court erred by: (1) failing to give the jury a unanimity instruction, (2) failing to respond to Jury Communication No. 2 with an instruction that "assumptions" were not allowed, (3) failing to instruct the jury as to the correct state of mind for each element of insurance fraud, (4) failing to specify the correct state of mind for each element of the substantive Theft 2 offense, (5) erroneously instructing the jury regarding the statutory valuation presumption under HRS § 708–801(4), and (6) failing to instruct the jury on the term "defense" and on the lesser included offenses of Misdemeanor Insurance Fraud [4] and At-

---

4. HRS § 431:10C–307.7(b)(3) currently provides

as it did when Whitaker allegedly committed the

tempted Theft in the Third Degree[5] (Attempted Theft 3).

## DISCUSSION

A. *The Circuit Court Did Not Err in Denying Whitaker's Request for a Unanimity Instruction.*

■ At trial, Plaintiff–Appellee State of Hawai'i (the State) presented evidence that Whitaker falsely claimed insurance benefits for both pre-existing and self-inflicted damages to his car. Whitaker argues that because (1) the State argued for criminal liability based on multiple acts, (2) the jury was evidently compartmentalizing liability, and (3) the grade of the offenses he could be convicted of (Felony/Misdemeanor Insurance Fraud or Attempted Theft 2 or 3) depended on the value of damages that the jury could unanimously agree was falsely claimed by Whitaker, the circuit court was required to give the jury a unanimity instruction. We disagree.

■ In multiple-acts cases where several acts are alleged and any one of them could constitute the crime charged, the State must either elect the particular criminal act upon which it will rely for conviction, or the circuit court must instruct the jurors that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Shinyama,* 101 Hawai'i 389, 399, 69 P.3d 517, 527 (2003) (quoting *State v. Jones,* 96 Hawai'i 161, 170, 29 P.3d 351, 360 (2001)).

■ However, a unanimity instruction is not required where a charged offense is based on a "single incident of culpable conduct." *See State v. Valentine,* 93 Hawai'i 199, 208–09, 998 P.2d 479, 488–89 (2000) (holding that a unanimity instruction was not

required where evidence showed only a single episode between the defendant and a police officer, "during which the two allegedly engaged in a continuous struggle for possession and control of [a] firearm"). Similarly, "no specific unanimity instruction is necessary where the defendant is charged with a continuing offense, based on facts and circumstances that constitute a continuing course of conduct." *State v. Rabago,* 103 Hawai'i 236, 250, 81 P.3d 1151, 1165 (2003) (internal quotation marks omitted). According to the supreme court, a continuing offense is

> a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy, or an offense which continues day by day, or a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

Put differently,

> the test to determine whether a defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses separate and distinct intents. If there is but one intention, one general impulse, and one plan, there is but one offense.

*State v. Arceo,* 84 Hawai'i 1, 18, 928 P.2d 843, 860 (1996) (brackets and citations omitted). Finally, no unanimity instruction is required when the offense with which a defendant is charged may be committed in more than one way. *Rabago,* 103 Hawai'i at 251, 81 P.3d at 1166. In *Rabago,* the Hawai'i Supreme Court explained the dichotomy between

---

offenses he was charged with, in relevant part, as follows:

**Insurance fraud; penalties . . . .**
(b) Violation of subsection (a) is a criminal offense and shall constitute a:

. . . .

(3) Misdemeanor if the value of the benefits, recovery, or compensation obtained or attempted to be obtained is $300 or less.

5. HRS § 708–832 (Supp.2006) currently provides as it did when Whitaker allegedly commit-

ted the offenses he was charged with, in pertinent part, as follows:

**Theft in the third degree.** (1) A person commits the offense of theft in the third degree if the person commits theft:
(a) Of property or services the value of which exceeds $100; or

. . . .

(2) Theft in the third degree is a misdemeanor.

"multiple acts" and "alternative means" cases by adopting the following reasoning of the Kansas Supreme Court in *State v. Timley,* 255 Kan. 286, 875 P.2d 242, 246 (1994):

In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime beyond a reasonable doubt.

*In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime.* To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*State v. Rabago,* 103 Hawai'i at 251–52, 81 P.3d at 1166–67.

In this case, Whitaker was charged with Insurance Fraud and Attempted Theft 2, based on allegations that he filed a false claim for insurance benefits with AIG.

■ As to the Insurance Fraud offense, the indictment charged that Whitaker

did knowingly present, cause or permit to be presented false information on a claim to AIG ... with intent to obtain benefits or recovery or compensation for benefits or services provided, to wit, insurance pro-

ceeds, the value of which exceeds Three Hundred Dollars ($300.00),. thereby committing the offense of Insurance Fraud in violation of [HRS §§ ]431:10C–307.7(a)(1) and 431:10C–307.7(b)(2)[.]

The Insurance Fraud charge was based on a single incident of culpable conduct—the submission of a false claim to AIG for insurance benefits—and not on two separate claims for benefits to repair, respectively, the alleged self-inflicted scratches and the alleged pre-existing damages. The evidence at trial also disclosed that when he submitted an allegedly false claim, Whitaker had only one intention, one general impulse, and one plan: to defraud AIG. The State did not portray Whitaker's conduct as being comprised of separate and distinct culpable acts, nor did it emphasize any specific conduct upon which the jury could find from the evidence that Whitaker committed a single charged offense on two or more distinct occasions. Therefore, the Insurance Fraud offense was also a continuing offense. No unanimity instruction was required for the Insurance Fraud offense.

As to the Attempted Theft 2 offense, the Hawai'i Supreme Court has recognized that Theft of State Property by Deception in violation of HRS § 708–830(2) (1993),[6] the form of Theft that Whitaker was charged with attempting to commit,[7] is a continuing offense. *State v. Arceo,* 84 Hawai'i 1, 18–19, 928 P.2d 843, 860–61 (1996). Therefore, no unanimity instruction was required for this offense.

■ Whitaker appears to argue that because there are alternative means by which the jury could find Whitaker guilty of the charged offenses (for example, falsely claiming insurance benefits for either the pre-existing damages to the trunk or the self-

---

6. HRS § 708–830(2) (1993) provides, in relevant part:

**Theft.** A person commits theft if the person does any of the following:

. . . . .

(2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

7. Count II of the indictment in this case charged Whitaker with attempting to commit Theft in the Second Degree by "attempting to obtain or exert control over the property of AIG HAWAII INSURANCE COMPANY, INC. [ (AIG) ] the value of which exceeds Three Hundred Dollars ($300.00), by deception, with intent to deprive [AIG] of the property[.]"

inflicted scratches), jury unanimity as to which means the jury relied upon to convict Whitaker of the charges was necessary. The supreme court has stated, however, that

> [i]n an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative.

*Shinyama,* 101 Hawai'i at 399, 69 P.3d at 527. It is therefore irrelevant whether the jurors determined that the value of the insurance benefits or services that Whitaker attempted to collect or the value of the property that Whitaker attempted to obtain or exert control over was due to either self-inflicted or pre-existing damages. Thus, a specific unanimity instruction requiring the jury to unanimously agree on the means by which Whitaker committed the charged offenses was not necessary.

Accordingly, we conclude that the circuit court did not err in denying Whitaker's request to give the jury a specific unanimity instruction.

B. *The Circuit Court's Failure to Clarify the Difference Between "Assuming" And "Inferring" Was Harmless Error.*

■ Whitaker briefly argues that the circuit court erred in not instructing the jurors, in response to Jury Communication No. 2, that they could not assume anything. Whitaker contends that this error was apparent when the jury used the term "assume[,]" rather than "infer[,]" in the communication.

■ "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks omitted) (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)).

Here, the valuation presumption instruction clearly required the jury to find that the State proved beyond a reasonable doubt both that the value of the insurance benefits or services falsely claimed and the value of the property that Whitaker attempted to obtain or exert control over exceeded $300 before the jury could infer, pursuant to HRS § 708–801(4), that the state of mind for the value element of the Insurance Fraud and Attempted Theft 2 offenses was satisfied. The jurors' use of the terms "infer" and "assume" interchangeably did not lessen the State's burden. Thus, when the jury instructions are read and considered as a whole, the circuit court's failure to clarify the difference between "assuming" and "inferring" was, at most, harmless error.

C. *The Circuit Court's Jury Instruction Defining Insurance Fraud Was Not Plainly Erroneous.*

HRS § 702–205 (1993) states:

> **Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
>
> (a) Are specified by the definition of the offense, and
>
> (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

The state of mind required to find a person guilty of an offense is set forth in HRS § 702–204 (1993) as follows:

> **State of mind required.** Except as provided in section 702–212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, *as the law specifies,* with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

(Emphasis added.) The states of mind applicable to the elements of an offense are defined in HRS § 702–206 (1993), in relevant part, as follows:

> **Definitions of states of mind.** (1) "Intentionally."

(a) A person acts intentionally with respect to his [or her] conduct when it is his [or her] conscious object to engage in such conduct.

(b) A person acts intentionally with respect to attendant circumstances when he [or she] is aware of the existence of such circumstances or believes or hopes that they exist.

(c) A person acts intentionally with respect to a result of his [or her] conduct when it is his [or her] conscious object to cause such a result.

(2) "Knowingly."

(a) A person acts knowingly with respect to his [or her] conduct when he [or she] is aware that his [or her] conduct is of that nature.

(b) A person acts knowingly with respect to attendant circumstances when he [or she] is aware that such circumstances exist.

(c) A person acts knowingly with respect to a result of his [or her] conduct when he [or she] is aware that it is practically certain that his [or her] conduct will cause such a result.

(3) "Recklessly."

(a) A person acts recklessly with respect to his [or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

(b) A person acts recklessly with respect to attendant circumstances when he [or she] consciously disregards a substantial and unjustifiable risk that such circumstances exist.

(c) A person acts recklessly with respect to a result of his [or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that his [or her] conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him [or her], the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

"Insurance fraud" is defined in HRS § 431:10C–307.7, in relevant part, as follows:

(a) A person commits the offense of insurance fraud if the person acts or omits to act *with intent to obtain benefits* or recovery or compensation for services provided, . . . through the following means:

(1) *Knowingly presenting, or causing or permitting to be presented,* any false information on a claim[.]

(Emphases added.)

In this case, the circuit court read the following Insurance Fraud instruction to the jury:

In Count [I] of the [I]ndictment, [Whitaker] is charged with the offense of Insurance Fraud. A person commits the offense of Insurance Fraud if he [or she] *knowingly* presents, causes or permits to be presented false information on a claim with the *intent* to obtain benefits, or recovery, or compensation for benefits or services provided, the value of which exceeds $300.

There are three material elements of the offense of Insurance Fraud, each of which the prosecution must prove beyond a reasonable doubt. These three elements are:

(1), That on or about March 1st, 2001, to and including March 6th, 2001, in the City and County of Honolulu, State of Hawai'i, [Whitaker] *knowingly* presented, caused or permitted to be presented false information on a claim to [AIG]; and,

(2), That [Whitaker] did so with the *intent* to obtain benefits, or recovery, or compensation for benefits or services provided; to wit, insurance proceeds; and

(3), That [Whitaker] *believed* the value of the benefits, or recovery, or compensation for benefits or services provided; to wit, insurance proceeds, exceeded $300.

(Emphases added.) The circuit court also instructed the jury about the different states of mind applicable to the elements of the offenses, as follows:

A person acts intentionally with respect to his [or her] conduct when it is his [or her] conscious object to engage in such conduct.

A person acts intentionally with respect to attendant circumstances when he [or she] is aware of such circumstances or *believes* or hopes that they exist.

A person acts intentionally with respect to a result of his [or her] conduct when it is his [or her] conscious object to cause such a result.

A person acts knowingly with respect to his [or her] conduct when he [or she] is aware that his [or her] conduct is of that nature.

A person acts knowingly with respect to attendant circumstances when he [or she] is aware that such circumstances exist.

A person acts knowingly with respect to a result of his [or her] conduct when he [or she] is aware that it is practically certain that his [or her] conduct will cause such a result.

(Emphasis added.)

Whitaker argues that the circuit court erred in instructing the jury as to the offense of Insurance Fraud because the instruction failed to specify the correct state of mind for each element of the offense. Specifically, Whitaker maintains that the foregoing instruction was erroneous because it: (1) failed to mention that the "knowing" state of mind applied to the attendant circumstance of "false information[;]" and (2) used the term "believed," rather than "intended[,]" in setting forth the state of mind for the value element of the offense.

### 1. *The "False Information" Attendant Circumstance*

 Regarding the "false information" attendant-circumstance element of the Insurance Fraud offense, the record indicates that Whitaker proposed the following jury instruction:

In Count I of the Indictment, [Whitaker] is charged with the offense of Insurance Fraud.

A person commits the offense of Insurance Fraud if he [or she] knowingly presents or causes or permits to be presented false information, with the intent to obtain benefits or recovery or compensation for benefits or services, the value of which exceeds Three Hundred Dollars ($300.00).

There are three material elements of the offense of Insurance Fraud, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about March 1, 2001, to and including March 6, 2001, in the City and County of Honolulu, *[Whitaker] did knowingly present, cause or permit to be presented false information on a claim* to [AIG]; and

2. That [Whitaker] did so with intent to obtain benefits or recovery or compensation for benefits or services provided, to wit, insurance proceeds; and

3. That [Whitaker] knew the value of the benefits or recovery or compensation for benefits or services exceeded Three Hundred Dollars ($300.00).

(Emphasis added.) Thus, Whitaker's proposed instruction as to the false-information-attendant-circumstance element was almost identical to the instruction ultimately given to the jury, except that the second paragraph of Whitaker's proposed instruction omitted the phrase "on a claim" after "false information[,]" which HRS § 431:10C–307.7(a)(1) requires.

As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error.... [T]his Court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

*State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citations omitted). Moreover,

[w]hen jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. If the instruc-

tions requested by the parties are inaccurate or incomplete but are necessary in order for the jury to have a clear and correct understanding of what it is that they are to decide, then the trial court has the duty either to correct any defects or to fashion its own instructions.

Nevertheless, the trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. If that standard is met, however, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo*.

Furthermore, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Vanstory*, 91 Hawai'i 33, 42–43, 979 P.2d 1059, 1068–69 (1999) (internal quotation marks, citations, and brackets omitted; block quote format altered).

In this case, it would have been better if the circuit court's instruction as to the first material element of the Insurance Fraud offense had separately tied the knowing state

of mind to the "false claim" attendant circumstance. For example, the instruction could have stated:

(1) That on or about March 1, 2001, to and including March 6, 2001, in the City and County of Honolulu, [Whitaker] did knowingly present, cause or permit to be presented [~~false~~] information on a claim to [AIG] <u>that [Whitaker] knew was false</u>[.]

(Deleted language bracketed and stricken; new language underscored.) However, considering all the jury instructions as a whole, we cannot conclude that the particular instruction was plainly erroneous. The instruction sufficiently apprised the jury that it was required to find that Whitaker knew that the information on the claim he presented was false.

### 2. The Value–Attendant–Circumstance Element

Whitaker's proposed jury instruction regarding the value element of the Insurance Fraud offense required the prosecution to prove beyond a reasonable doubt that "[Whitaker] *knew* that the value of the benefits or recovery or compensation for benefits or services exceeded Three Hundred Dollars ($300.00)." (Emphasis added.) Whitaker now maintains that the applicable state of mind for the value element of the insurance fraud offense is "intentional," and therefore, the jury should have been instructed that he "*intended* that the value of the benefits or recovery or compensation for benefits or services provided, to wit, insurance proceeds, exceeded $300." (Emphasis added.)

In so arguing, Whitaker relies on *State v. Cabrera*, 90 Hawai'i 359, 978 P.2d 797 (1999), in which the Hawai'i Supreme Court adopted this court's analysis in *State v. Mitchell*, 88 Hawai'i 216, 965 P.2d 149 (App.1998), and held that pursuant to HRS § 702–207 (1993),[8] the intentional state of mind applied to each material element of the Theft 2 offense, including the valuation element. *Cabrera*, 90 Hawai'i at 367, 978 P.2d 805.

8. HRS § 702–207 (1993) provides as follows:
**Specified state of mind applies to all elements.** When the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

■ Unlike the Theft 2 offense at issue in *Cabrera* and *Mitchell*, however, the Insurance Fraud statute, HRS § 431:10C–307.7, specifically refers to two distinct states of mind in defining the elements of the offense:

(a) A person commits the offense of insurance fraud if the person acts or omits to act *with intent* to obtain benefits or recovery or compensation for services provided, or provides legal assistance or counsel with intent to obtain benefits or recovery, through the following means:

(1) *Knowingly* presenting, or causing or permitting to be presented, any false information on a claim.

. . . .

(b) Violation of subsection (a) is a criminal offense and shall constitute a:

(1) Class B felony if the value of the benefits, recovery, or compensation obtained or attempted to be obtained is more than $20,000;

(2) Class C felony if the value of the benefits, recovery, or compensation obtained or attempted to be obtained is more than $300; or

(3) Misdemeanor if the value of the benefits, recovery, or compensation obtained or attempted to be obtained is $300 or less.

The requisite state of mind for the value element of the Insurance Fraud offense, however, is not specifically mentioned in HRS § 431:10C–307.7(b)(2). Therefore, pursuant to HRS § 702–204 (1993), the state of mind for the value element of insurance fraud is "intentionally, knowingly, or recklessly."

Whitaker contends that "[w]ith respect to the element of value in Element No. 3, use of the vague term 'believed,' rather than the clearly defined term 'intended,' was erroneous." Whitaker argues that "the jury's use of the term 'knew' in Jury Communication No. 2 in reference to the element of value, revealed jury confusion about the terms, and exposed [Whitaker] to a conviction based on a state of mind lower than what was required. The instruction should have used the term 'intended[.]' "

■■ The circuit court appears to have substituted the word "believed" for "intended" in the Insurance Fraud value-element instruction based on two statutory provisions. First, HRS § 702–206 (1993), which generally defines the states of mind for the elements of an offense, provides in subsection (1)(b) that "[a] person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or *believes* or hopes *that they exist.*" (Emphases added.) Thus, the term "intentional," as applied to the value-attendant-circumstance element of the Insurance Fraud offense, means "believes."

Additionally, as to valuation, HRS § 708–801(4) and (5) (Supp.2006) currently provides, as it did when Whitaker was indicted, as follows:

**Valuation of property or services.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:

. . . .

(4) When acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, the value of property or services shall be prima facie evidence that the defendant *believed or knew* the property or services to be of that value. When acting recklessly with respect to the value of property or services is sufficient to establish an element of an offense, the value of the property or services shall be prima facie evidence that the defendant acted in reckless disregard of the value.

(5) When acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, it is a defense, which reduces the class or grade of the offense to a class or grade of offense consistent with the defendant's state of mind, that the defendant *believed* the valuation of the property or services to be less. When acting recklessly with respect to the value of property or services is re-

quired to establish an element of an offense, it is a defense that the defendant did not recklessly disregard a risk that the property was of the specified value.

(Emphases added.) The Commentary on HRS § 708–801 (1993) states that "[s]ection 708–801 provides rules for determining the value of property and the actor's state of mind with respect to the value of the property when these factors are required to be determined by the definitions of substantive offenses." Moreover, the language of HRS § 708–801(4) indicates that *either* a defendant's "belief" or "knowledge" is sufficient in establishing an intentional *or* knowing state of mind as to the value element. Construing HRS § 702–206 and HRS § 708–801 in pari materia, *see* HRS § 1–16 (1993),[9] the circuit court appears to have substituted "believed" for "intended" in the value-element instruction.

Since, as discussed above, a "reckless" state of mind was applicable to the value element of the Insurance Fraud offense, Whitaker was not "exposed to a conviction based on a state of mind lower than what was required."

### D. The "Attempted Theft 2" Instruction Was Not Erroneous.

Whitaker argues that the "Attempted Theft 2" instruction was erroneous because in defining the "Substantive Theft 2" offense, the circuit court failed to specify that the intentional state of mind applied to all the elements of the Theft 2 offense. Since Whitaker was charged with *Attempted* Theft 2 and the circuit court's instruction on the Attempted Theft 2 offense specified that in order to establish the charged offense, the prosecution was required to prove, beyond a reasonable doubt, that Whitaker "intentionally engage[d] in conduct which, under the circumstances as he believed them to be, constitute a substantive step in a course of conduct intended to culminate in his commission of Theft [2]," we find no merit to this argument.

Whitaker also argues that "[w]ith respect to the element of value, the use of the vague term 'believed' instead of the clearly defined term 'intended' in Element No. 4 of the substantive Theft 2nd offense, was erroneous." Based on our discussion with respect to the value element of the Insurance Fraud instruction, we conclude that the circuit court did not err when it substituted the term "believed" for "intended" in the jury instructions given for Attempted Theft 2.

### E. The Circuit Court Did Not Err in Failing to Instruct the Jury on the Term "Defense."

Whitaker contends the circuit court "erred in failing to instruct the jury on the term 'defense.' " Whitaker also contends that it was incumbent on the circuit court to instruct the jurors that if they concluded that Whitaker " 'believed' the value to be $300 or less," they must find him not guilty.

Generally, "court[s] need not define common terms that are readily understandable to the jury." *United States v. Somsamouth,* 352 F.3d 1271, 1275 (9th Cir.2003) (citing *United States v. Shryock,* 342 F.3d 948, 986 (9th Cir.2003)); *see also State v. Caldwell,* 140 Idaho 740, 741, 101 P.3d 233, 234 (2004) (ordinary words used in the sense in which they are generally understood need not be defined in jury instructions); *State v. Randle,* 32 Kan.App.2d 291, 81 P.3d 1254, 1257 (2007) (holding that a "term which is widely used and readily comprehensible need not have a defining instruction"). The term "defense" is a widely used and generally understood term. *Merriam–Webster's Collegiate Dictionary* defines the word in part as "a defendant's denial, answer, or plea[,] ... an argument in support or justification[,] ... the collected facts and method adopted by a defendant to protect himself [or herself] against a plaintiff's action[.]" *Merriam–Webster's Collegiate Dictionary* 301 (10th ed.2000). Similarly, *Black's Law Dictionary* defines "defense" as "[a] defendant's stated reason why the plaintiff or prosecutor has no

---

9. HRS § 1–16 (1993) provides, "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."

valid case; esp., a defendant's answer, denial, or plea." *Black's Law Dictionary* 451 (8th ed.2004).

The definitions of the term "defense" found in both dictionaries are similar and demonstrate that the legal understanding of the term is not significantly different from the common understanding of the term. Thus, a jury instruction explaining its meaning was unnecessary.

 Moreover, our review of the record demonstrates that Whitaker is wrong in asserting that "[t]he court failed to follow up and instruct the jury that, if it found that . . . criteria for a 'defense' was met, that the jury then must find [Whitaker] 'not guilty.'" The circuit court sufficiently instructed the jury that "[i]f, after consideration of the evidence and the law, you have a reasonable doubt of [Whitaker's] guilt, then the prosecution has not proved [Whitaker's] guilt beyond a reasonable doubt, and it is your duty to find [Whitaker] not guilty."

F. *The Circuit Court Did Not Err in Failing to Instruct the Jury on the Lesser Included Offenses of Misdemeanor Insurance Fraud and Attempted Theft 3.*

Finally, Whitaker argues that the circuit court plainly erred in failing to instruct the jury "on the lesser included offenses of Misdemeanor Insurance Fraud and Attempted Theft 3." The Hawai'i Supreme Court has held that

when a defendant in a criminal case timely asks for a lesser included offense instruction to which he or she is entitled, it is reversible error not to give it. On the other hand, a trial court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Indeed, in the absence of such a rational basis in the evidence, the trial court should not instruct the jury as to included offenses. A fortiori, it is not error for a trial court to refuse—and the trial court should refrain from giving—an instruction regarding an uncharged offense that is not "included" for purposes of the Hawaii Penal Code, within the charged offense.

Where there *is* such a rational basis in the evidence, however, we have held that it may be plain error for a trial court to fail to give an included offense instruction even when neither the prosecution nor the defendant have requested it[.]

*State v. Kinnane,* 79 Hawai'i 46, 49–50, 897 P.2d 973, 976–77 (1995) (citations, quotation marks, and brackets omitted).

 Here, the circuit court was not obligated to instruct the jury on the lesser included offenses of Misdemeanor Insurance Fraud and Attempted Theft 3 because pursuant to *Kinnane,* there was no rational basis in the evidence for a verdict acquitting Whitaker of the offenses charged and convicting him of the lesser included offenses. *Id.* at 49–50, 897 P.2d at 976–77. Taganas testified that the damages Whitaker attempted to claim from AIG were valued at $700 for the damage to the trunk lid and $1,400 for the scratch marks on the vehicle. Whitaker himself stated in his interview with Dela Vega that he had expected to have the car painted for an amount between $600 and $700. There was no evidence proffered that the value of the damages that Whitaker claimed, individually or collectively, amounted to less than $300. Without such evidence, no rational basis could exist for a verdict acquitting Whitaker of the offenses charged and convicting him of the lesser included offenses. Thus, "in the absence of such a rational basis in the evidence, the trial court *should not* instruct the jury as to the included offenses." *Id.* Therefore, we conclude the circuit court did not err in failing to instruct the jury on the lesser-included offenses of Misdemeanor Insurance Fraud and Attempted Theft 3.

CONCLUSION

In light of the foregoing discussion, we affirm the July 27, 2004 Judgment entered by the Circuit Court of the First Circuit.