STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ANTHONY PETER FUNN, Defendant-Appellant.
No. 28821.
Intermediate Court of Appeals of Hawaii.
July 1, 2009.
On the briefs:
Craig W. Jerome, Deputy Public Defender, for Defendant-Appellant.
Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
(By: Watanabe, Acting C.J., Foley and Fujise, JJ.)
Defendant-Appellant Anthony Peter Funn (Funn) appeals from the Judgment of Conviction and Probation Sentence (Judgment) filed on October 1, 2007 in the Circuit Court of the First Circuit (circuit court).[1] A jury found Funn guilty of Promoting a Dangerous Drug in the Third Degree (PDD), in violation of Hawaii Revised Statutes (HRS) § 712-1243 (Supp. 2008), and Unlawful Use of Drug Paraphernalia (UUDP), in violation of HRS § 329-43.5(a) (1993).
On appeal, Funn contends the circuit court plainly erred or abused its discretion by (1) giving an elements jury instruction that misstated the law as to the UUDP charge; (2) failing to define "controlled substance"; (3) failing to give a unanimity instruction; (4) admitting evidence of Funn's post-arrest silence during the case-in-chief of the State of Hawai'i (State); (5) giving a prejudicial jury instruction regarding Funn's out-of-court statement to police; and (6) permitting prosecutorial misconduct during opening and closing statements. Funn asks this court to vacate the Judgment and remand the case for a new trial.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Funn's points of error as follows:
(1) The circuit court did not plainly err by giving an elements jury instruction as to the UUDP charge. The circuit court's jury instruction that a person commits the offense of UUDP "if he uses or possesses an object with the intent to ingest, inhale, or otherwise introduce" instead of with "[the] inten[t] to use the object to ingest, inhale, or otherwise introduce" a controlled substance into the human body was not plain error. (Emphasis added.) When read as a whole, the instruction made clear that the State had the burden to prove Funn possessed and intended to use an object for purposes of introducing a controlled substance into his body.[2] See Nelson v. Univ. of Hawai'i, 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citation omitted) ("When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading."). Funn's substantial rights, therefore, were not affected by the circuit court's instruction.
(2) The circuit court did not plainly err by failing to define the term "controlled substance." In State v. Whitaker, 117 Hawai'i 26, 40, 175 P.3d 136, 150 (App. 2007), this court stated that "the trial court is not required to instruct the jury in the exact words of the applicable statute but [is required] to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case." (Emphasis added.) In State v. Kupihea, 98 Hawai'i 196, 199, 46 P.3d 498, 501 (2002), the Hawai'i Supreme Court held that a jury instruction, explicitly establishing "methamphetamine [as] a controlled substance under state law ... simply restate[d] the statutory language of HRS § 329-43.5(a)." The circuit court in the instant case also informed the jury of the language of HRS § 329-43.5(a), thereby providing the jury with an understandable instruction that sufficiently established methamphetamine as a "controlled substance."
(3) The circuit court did not plainly err by failing to give a unanimity instruction. The record reflects that the State effectively elected the glass pipe as the specific item it would rely on to establish the UUDP charge. The State's mention of "an object" for purposes of HRS § 329-43.5(a) was made only in reference to the glass pipe; no effort was made to establish a violation in regard to any other object. See State v. Gomes, 93 Hawai'i 13, 21, 995 P.2d 314, 322 (2000) (holding that the State effectively elected one of two events that could be deemed "separate and distinct culpable acts" to establish assault, where substantial bodily injury was discussed only in reference to one event).
Defense counsel, furthermore, addressed the jury during opening statements, stating:
[Funn] is not guilty. He's not guilty because the pipe was not his.
And, by the way, we're talking about a pipe which is actually... a three inch cylinder of glass that contained burnt residue of crystal methamphetamine, okay. That's what we're talking about in this case.
. . . .
But, the evidence will show in this case that the pipe was not his, okay.
The evidence will show [Funn] never possessed that pipe [.]
(Emphases added.) Where both the State and Funn's arguments identified the glass pipe as the object at issue, no unanimity instruction was required.
(4) The circuit court did not plainly err by admitting testimony regarding statements Funn made or did not make to officers. During opening statements, defense counsel stated:
You'll hear that [a] police officer is accusing [Funn] of doing drugs, blaming [Funn] for leaving the torch and the pipe behind and because of that you'll hear that [Funn] stood up for himself, refused to be pushed around by this officer and denied ownership and basically what he was doing was telling the officer that stuff is not mine. And, that's all [Funn] did that day. (Emphasis added.)[3] The State questioned Officer Deitschmann as to whether Funn indeed denied possession of the pipe.[4] This inquiry did not violate Funn's right to remain silent insofar as the State used the fact of Funn's silence to challenge Funn's exculpatory version of events and claims to have told the police the same version. See State v. Alo, 57 Haw. 418, 425, 558 P.2d 1012, 1017 (1976) (citing to Doyle v. Ohio, 426 U.S. 610, 619 n.11, 96 S. Ct. 2240, 2245 n.11 (1976) (observing that inquiry into a defendant's post-arrest silence may be proper if the fact is used to challenge the defendant's testimony as to his behavior following arrest).
(5) The circuit court did not plainly err by giving a jury instruction regarding Funn's out-of-court statement to police. Funn contends the circuit court's instruction "implied to the jury that it must consider Funn's exculpatory statements under a special set of criteria[,]... in a manner distinct from other witnesses... [and] every other issue in this case."[5] The circuit court explicitly instructed, however, that Funn "has no duty or obligation to call any witnesses or produce any evidence. [Funn] in this case has testified. When a defendant testifies, his credibility is to be tested in the same manner as any other witness." In the instant case, taken as a whole, the instructions were not prejudicially insufficient, erroneous, inconsistent, or misleading. Nelson, 97 Hawai'i at 3 86, 3 8 P.3d at 105. The jury is presumed to have followed the circuit court's instructions. State v. Klinge, 92 Hawai'i 577, 592, 994 P.2d 509, 524 (2000).
(6) The circuit court did not plainly err or abuse its discretion by permitting prosecutorial misconduct during opening and closing statements. "Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." State v. McGriff, 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994) (citations omitted). "In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant." State v. Acrrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992).
With respect to the opening statement at issue,[6] the record indicates that the State sought to tender and admit the evidence through Brody's explanation of his subsequent actions and observations. See State v. Sanchez, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App. 1996) (internal quotation marks and citation omitted) ("The State should only refer in the opening statement to evidence that it has a genuine good-faith belief will be produced at trial."). Any impropriety created by the Deputy Prosecuting Attorney's opening statement, furthermore, was sufficiently cured by the circuit court's instruction that " [t] he opening statements are not evidence. It's an explanation to you by the attorneys of what they believe will be proven to you in the case. The evidence comes to you in the form of testimony and exhibits."
Similarly, any impropriety created by the Deputy Prosecuting Attorney's closing statement[7] was sufficiently cured when the circuit court sustained defense counsel's objection and provided the following jury instructions:
Trial procedures are governed by rules. When an attorney believes that the rules require it, it is his or her duty to raise an objection. It is within the province of the trial judge to rule on such objection. During the course of this trial, you have heard counsel make objections. You must not consider objections raised by counsel in your deliberations.
Statements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence. You must also disregard any remark I may have made unless the remark was an instruction to you. If I have said or done anything which has suggested to you that I am inclined to favor the claims or positions of either party, or if any expression or statement of mine has seemed to indicate an opinion relating to which witnesses are or are not worthy of belief or what facts are or are not established or what inferences should be drawn therefrom, I instruct you to disregard it.
Neither instance of alleged prosecutorial misconduct rose to the level of reversible error.
Therefore,
IT IS HEREBY ORDERED that the Judgment of Conviction and Probation Sentence filed on October 1, 2007 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Michael D. Wilson presided.
[2] The circuit court instructed the jury as follows:

In Count II of the felony information, [Funn] is charged with the offense of [UUDP].
A person commits the offense of [UUDP] if he uses or possesses an object with the intent to ingest, inhale, or otherwise introduce into the human body a controlled substance.
There are two material elements of the offense of [UUDP], each of which the [State] must prove beyond a reasonable doubt.
These two elements are:
One, that on or about the 19th day of November, 2006, in the City and County of Honolulu, [Funn] used or possessed an object with the intent to ingest, inhale, or otherwise introduce into the human body a controlled substance;
And two, that the object was drug paraphernalia.
Drug paraphernalia means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing into the human body a controlled substance. It includes but is not limited to objects used, intended for use, or designed for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish, hashish oil, or methamphetamine into the human body, such as metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.
In determining whether or not it is drug paraphernalia, you should consider, in addition to all other logically relevant factors the following:
. . . .
In order for the object to be drug paraphernalia, the [State] must prove that [Funn] intended that the object be used with a controlled substance.
Without [Funn's] intent to use the object with a controlled substance, none of the specific examples or factors listed above can transform the object into drug paraphernalia.
(Emphases added.)
[3] Consistent with defense counsel's statement, Funn testified on direct examination that "from the time when I had gotten up within the first minute [Officer Deitschmann] yelled for the camera and he was staring at [the pipe] I repeatedly told him it was not mine."
[4] The State questioned Officer Deitschmann on direct examination as follows:

Q. [State] Okay, now, at any time up to that point did [Funn] ever say that that pipe was not his?
A. [Officer Deitschmann] Not at the scene, no, sir. He did later, but, not at the scene.
Q. When did he begin to tell you that that pipe was not his?
A. That was maybe an hour later [at] Castle Hospital during his treatment.
Q. But, at the time you arrested him
Q. he never said that wasn't his pipe?
A. No, sir.
Q. Was there any discussion about the pipe?
A. No, sir.
Q. Okay, But, he was also told that he was being arrested for  for the possession of the pipe, right?
A. Yes, sir.
Q. And, he didn't say it wasn't his then, did he?
A. Not at that time, sir.
Q. Only at the hospital?
A. Yes, sir.
Defense counsel also questioned Officer Deitschmann as to whether Funn denied possession of the pipe:
Q. [Defense Counsel] [Funn] never told you that was his pipe, right?
A. [Officer Deitschmann] No.
* * *
Q. Now at this point [Funn] is lunging towards the pipe, is it your testimony you guys had no conversation whatsoever about the pipe that was on the ground?
A. I didn't talk to him about it, no....
Q. And, at this point in time he hadn't told you that that's not my stuff, that's not my pipe, he never told you that?
A. No, sir.
[5] Funn identifies the following instruction as plainly erroneous:

As the sole and exclusive judges of the facts and of the credibility of the witnesses, it is your exclusive right to determine whether and to what extent [Funn's] out-of-court statement to police is worthy of belief. In evaluating the reliability and trustworthiness of the out-of-court statement, you should consider all of the circumstances surrounding the making of the statement.
There has been conflicting testimony as to whether [Funn] made a statement outside of court. It is for you to decide whether or not [Funn] made the statement. In making this decision, you should consider all of the evidence about the statement, including the circumstances under which [Funn] may have made it.
[6] Funn identifies the following statements in the Deputy Prosecuting Attorney's opening statement as grounds for his prosecutorial-misconduct claim:

[Deputy Prosecuting Attorney]: A little bit before seven [Brody's] workers also preparing [to open the restaurant] let him know that... [Funn] is still out there still passed out, and, that he has a crack pipe. His employees call it a crack pipe.
(Emphasis added.)
[7] Funn identifies the following portion of the Deputy Prosecuting Attorney's closing argument as grounds for his claim:

[Deputy Prosecuting Attorney]: It was an ice pipe as far as Officer Deitschmann was concerned and in his experience as an officer and even apparently to the people in the restaurant who saw the pipe. They don't [know] what an ice pipe is or 
. . . .
Even according to... Brody who went and confirmed himself and looked and saw that there was an ice pipe, he didn't call it an ice pipe. He called it a pipe that he [sic] used for drugs.
(Emphases added.) Funn contends "the jury was never instructed to disregard the [State's] improper comment[]" and the circuit court was "sending the message to the jury that the [State's] recollection- of the evidence was correct."